# 19 -1020-CV

========================

## *United States Court of Appeals for the Second Circuit*

―――――――――――――x
YAJAIRA VELAZQUEZ, on behalf of herself,
*Plaintiff-Appellant*

-against-

YOH SERVICES, LLC, CNBC, LLC, NBCUNIVERSAL MEDIA, LLC, BRENDA GUZMAN, Individual and Official Capacity, MARY DUFFY, Individual and Official Capacity, CNBC, INC.,
*Defendants-Appellees*
JOHN AND JANE DOES 1 through 10, Individual and Official Capacities, XYZ CORP., 1-10
*Defendants*
―――――――――――――x
ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF – PLAINTIFF-APPELLANT

LAW OFFICE OF AMBROSE WOTORSON
Counsel of Plaintiff-Appellant
225 Broadway, 41st Floor
New York, New York 10007
(212) 884-5985
(609) 598-0567 (Cellular)
Loaww1650@aol.com

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES...........................................1

STATUTES............................................................2

PRELIMINARY STATEMENT....................................3

QUESTION PRESENTED...........................................3

    1. Did the District Court err in dismissing Appellant's FLSA retaliation claim on Summary Judgment?

STANDARD OF REVIEW AND STATEMENT OF FACTS.......4

ARGUMENT .........................................................10

THE DISTRICT COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S FLSA RETALIATION CLAIM.................................................10

CONCLUSION......................................................16

## **TABLE OF AUTHORITIES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248 (1986)..................................................4

Adickes v. S. H. Kress & Co.
398 U.S. 144, 158-59, (1970)...........................................4

Bryant v. Maffucci
923 F.2d 979, 982 (2d Cir. 1991).....................................4

Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.
391 F.3d 77, 82-83 (2d Cir. 2004)....................................5

Cordiano v. Metacon Gun Club, Inc.,
575 F.3d 199, 204 (2d Cir. 2009).....................................5

Brown v. Eli Lilly & Co
654 F. 3D 347 (2d Cir. 2011)……………………………………………...5

Greathouse v. JHS Sec. Inc.,
784 F.3d 105, 107 (2d Cir.2015)……………………………………11

Kasten v. Saint-Gobain Performance Plastics Corp.
563 U.S. 1, 14 (2011))……………………………………………………11

Dunn v. Sederakis,
143 F. Supp. 3d 102, 112 (S.D.N.Y. 2015)……………………………11

Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.,
252 F.3d 545, 554 (2d Cir. 2001)……………………………………14

Richardson v. New York State Dep't of Corr. Serv.,
180 F.3d 426, 446–47 (2d Cir.1999)……………………………......14

Quinn v.Green Tree Credit Corp
159 F.3d 759, 769 (2d Cir.1998)……………………………………14, 15

Grant v. Bethlehem Steel Corp.
622 F.2d 43, 45–46 (2d Cir.1980)……………………………………15

## **STATUTES**

29 U.S.C. § 215(a)(3)……………………………………………….2, 10

8 U.S.C. Section 1291……………………………………………….2

N.Y. Lab. L. § 215(1)(a)……………………………………………10

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Appellant filed suit under 29 U.S.C. § 215(a)(3). The District Court below therefore had subject matter jurisdiction over this case. Since Appellant file a notice of appeal from the District Court's final judgment, this Court has Appellate jurisdiction under 28 U.S.C. Section 1291

## PRELIMINARY STATEMENT

Appellant, by her attorneys, Law Offices of Ambrose Wotorson, submits that the District Court's grant of Summary Judgment was inappropriate because there where material facts that were in dispute on whether Appellant was retaliated against because of complaints that she made which sounded in FLSA.

## QUESTIONS PRESENTED

Did the District Court err in dismissing Appellant's FLSA retaliation claim on Summary Judgment?

## STATEMENT OF THE CASE

Appellant, Yajaira Velazquez, appeals from grant of a Motion for Summary Judgment dismissing her FLSA retaliation claim.

## SUMMARY OF ARGUMENT

Appellant, who was a Make-up artist (hereinafter, "MUA") employed with Appellees, was terminated or "de-scheduled" in early January 2016 *only two months* after she complained in November 2015 about not being paid overtime pay

1

that she reasonably believed that she was due. Appellees representatives do not directly deny that Appellant so complained; rather they simply claim to not recall. The District Court erred in dismissing the matter on Summary Judgment, because it believed that Appellant's Complaints would not have put a reasonable person on notice that she was complaining about not being paid overtime hours that she was due.

We disagree.

Appellant's complaints were direct, and would have, under the circumstance, put Appellee's agents on adequate notice that she was complaining about not being paid overtime that she was due.

This is what retaliation actually looks like.

## **STANDARD OF REVIEW AND STATEMENT OF FACTS**

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn

from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59, (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence . . . on an essential element of the non-movant's claim." Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011).

3

Appellant, a Make-up artist who was employed with Appellees and was responsible for the on camera appearances of broadcasting talent at CNBC, was admittedly, late with her time cards before she was on-boarded as a paid employee. Yoh, the employment agency that assigned Appellant to CNBC, occasionally made up invoices for Appellant so that she could get paid during that period. Appellant had never physically seen those made up invoices. (Wotorson Declaration, Exhibit "1" at 53- 55).

During the same period, Appellant did not tell her eventual manager at CNBC, Brenda Guzman, how many hours she actually had worked. (Wotorson Declaration, Exhibit "1" at 56 - 57). Yet, during Appellant's on-boarding process, Guzman verified Appellant's hours based solely upon the work schedules. (Wotorson Declaration, Exhibit "4" at 20).

Once Appellant was a fully registered Yoh contractor, Appellant would input her own hours using a computerized system, "Agile.". Guzman would still verify Appellant's hours solely by checking them against work schedules, before approving those hours, also via the Agile system (Wotorson Declaration, Exhibit "4" at 21).

Guzman told Appellant that she would be paid overtime for the hours that she worked, but that she would be paid such overtime hours the following week that she worked, because of the additional hours were outside her approved budget.

4

(Wotorson Declaration, Exhibit "1", at 115-116; 331-333). Brenda Guzman confirmed that after the first year of MUAs working, it was "less permissible" to allow them to work for more than 20 hours a week. (Wotorson Declaration, Exhibit "4" at 34 - 35). In fact, Mary Duffy, Guzman's boss, would, from time to time, intervene to make sure that no MUAs were being assigned more that 20 hours a week. Yet, Appellant claimed that she frequently performed overtime hours despite Duffy's interventions. (Wotorson Declaration, Exhibit "4" at 37 - 38)

According to Appellant, Guzman had access to the computerized Agile system, and she would often go into the system and change her actual hours, so that she would be just shy of 40 hours, when in fact she had frequently exceeded 40 hours. (Wotorson Declaration, Exhibit "1" at 111- 115). However, Appellant explained in her deposition, even when her overtime hours were to be carried over to the following week, Guzman often failed to pay her those overtime hours. (Wotorson Declaration, Exhibit "1" at 115- 116).

Guzman confirmed that MUAs are to enter their time cards into the agile system themselves. But Guzman would have to approve access to agile. (Wotorson Declaration, Exhibit "4" at 18 ). Guzman would then review time cards, and based upon her own knowledge of hours worked, through the schedules, she would manually approve the hours. (Wotorson Declaration, Exhibit "4" at 19).

5

Guzman admitted that when Appellant did not fill out her time cards she would just estimate Appellant's time based upon her schedule, and the daily schedules. (Wotorson Declaration, Exhibit "4" at 16 -17). Yet, on occasions when Appellant did not put in her time cards in a timely fashion, Guzman would sometimes make up hours and input them on time cards for Appellant, based solely upon the work schedules, and then send emails to Appellant requesting that she confirm if the hours were correct. (Wotorson Declaration, Exhibit "4" at 23). Guzman testified in her deposition that she does not recall if Appellant ever responded to those emails. (Wotorson Declaration, Exhibit 4" at 22-23)

***Appellant's FLSA complaints***

Appellant complained to her immediate supervisor, Guzman, specifically about not being paid overtime under the aforementioned system. (Wotorson Declaration, Exhibit "1(a)" at 258 - 259). Appellant explained that when she confronted Guzman about her missing overtime pay, she would say to Guzman, amongst other things, "I better get paid next week!" (Wotorson Declaration, Exhibit "1" at 152 - 153). Guzman would respond by telling Appellant that she is "being a pain in the ass," and that Duffy was "really pissed at [her]." (Wotorson Declaration, Exhibit "1" at 153 -155).

Appellant also complained to Yoh's coordinator, Tara Fields, about her missing hours. (Wotorson Declaration, Exhibit "1(a)" at 329). Indeed, Appellant

6

complained about the practice of overtime hours being carried over because of alleged budgetary issues, and how she often would not get paid those hours even after the supposed "carry over." (Wotorson Declaration, Exhibit "1(a) at 332 -333; 349-351). Guzman later claimed in her deposition that she did not remember if Appellant complained to her that she was not paid for overtime hours worked. (Wotorson Declaration, Exhibit "4" at 43 - 44).

Mary Duffy also claimed that she did not remember if she had any conversations with Guzman about Appellant's pay. (Wotorson Declaration, Exhibit "1" at 32). Yet, Guzman recalled in her deposition that Appellant had at least two conversations with her (Guzman) about her pay issues, and Guzman, in turn, promptly told her manager, Duffy, about those conversations. (Wotorson Declaration, Exhibit "4" at 102-103).

Guzman further recalled that Appellant complained to her in October 2015 about her actual pay rate during an on-location shoot. (Wotorson Declaration, Exhibit "4" at 39 - 41). However, Appellant complained in November 2015 to her immediate supervisor, Guzman, about discrepancies in her pay. She complained that she was not getting paid for all of the hours she actually worked. (Wotorson Declaration, Exhibit "1" at 59- 61). Appellant even sent Guzman a text message asking if Guzman had gone on Agile — the computerized time tracker — and

7

changed her hours because she (Appellant) was short of money that she was owed for hours that she had worked. (Wotorson Declaration, Exhibit "1" at 61 - 63).

Guzman *did* recall, however, that Appellant complained in January 2016, about not being paid time-and-a-half, but that was during Martin Luther King day. (Wotorson Declaration, Exhibit "4" at 45).

### ***Termination, or "descheduling"***

There was no dispute that CNBC had significant disciplinary purview over MUAs like Appellant. (Wotorson Declaration, Exhibit "3" at 12- 15). CNBC would notify hair and make up artists (MUAs) directly if their services were no longer needed. (Wotorson Declaration, Exhibit "3" at 19).

Appellant was terminated or "de-scheduled" in early 2016. (Wotorson Declaration, Exhibit "3" at 27). The decision to terminate Appellant was made by Duffy, Guzman and a representative from Yoh, Tara Fields. (Wotorson Declaration, Exhibit "3" at 20 - 23).

## ARGUMENT

### THE DISTRICT COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S FLSA RETALIATION CLAIM

Both the FLSA and the NYLL make it unlawful to retaliate against an employee because she engaged in protected activity. See 29 U.S.C. § 215(a)(3) (unlawful for employer to "discharge or in any other manner discriminate against

8

any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]"); N.Y. Lab. L. § 215(1)(a) (unlawful for employer to "discriminate or retaliate against any employee . . . because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates [the NYLL]").

To establish a prima facie case, Appellant had to show "(1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the Appellant; and (3) a causal connection between the protected activity and the adverse employment action." Greathouse v. JHS Sec. Inc., 784 F.3d 105, 107 (2d Cir.2015) (quoting Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 14 (2011)).

The protected activity did not have to be a formal complaint: "an employee may premise a[n] [FLSA or NYLL] retaliation action on an oral complaint made to an employer, so long as . . . the complaint is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" Greathouse v. JHS Sec. Inc., 784 F.3d 105, 107 (2d Cir.2015). Courts interpreting this standard have held that the protected complaint must allege that the employer

9

is engaged in a violation. Dunn v. Sederakis, 143 F. Supp. 3d 102, 112 (S.D.N.Y. 2015).

### *Appellant engaged in protected activities which defendants were aware of.*

There are reasonable inferences in the record that Appellant complained to her immediate supervisor, Guzman, about not being paid overtime.

Appellant explained that when she confronted Guzman about her missing overtime pay, she told Guzman, amongst other things, "I better get paid next week!" Appellant also complained to Yoh's coordinator, Tara Fields, about her missing hours. Indeed, Appellant complained about the practice of overtime hours being carried over because of alleged budgetary issues, and how she often would not get paid those hours even after they were supposedly "carr[ied] over." Guzman testified in her deposition that *she did not remember* if Appellant complained to her about not being paid for overtime hours she worked.

Duffy also claimed that *she did not remember* if she had any conversations with Guzman about Appellant's pay.

Yet, Guzman recalled in her deposition that Appellant had at least two conversations with her about pay issues, and Guzman, in turn, promptly told her boss, Duffy, about those conversations.

Appellant complained in November 2015, to Guzman about discrepancies in her pay. She explicitly complained that she was not getting paid for all of the hours

10

she actually worked. Appellant even testified that she sent Guzman a text asking if Guzman had gone on agile, the computerized time tracker, and changed her hours because she (Appellant) was short of money that she was owed for hours that she had worked.

It is reasonable, under the circumstances, to infer from these facts, that Appellant did indeed complain about her not being paid for time worked, including overtime, and that defendants understood Plaintiff to be making a FLSA complaint.

Moreover, a causal relationship may be inferred between Appellant's protected activities and the adverse employment actions that she suffered: Guzman responded to Appellant's complaints by telling her she was "being a pain in the ass," and that Duffy was "really pissed at [her]." In fact, Duffy could neither confirm nor deny that Brenda Guzman told her about all of the conversations that she (Guzman) had with Appellant regarding her pay issues. If Duffy knew of these conversations, and she was "really pissed," then she had an intent and motive to retaliate against Appellant. Unfortunately, the District Court simply did not believe Appellant's accounts. That is impermissible on Summary Judgment, particularly in retaliation cases where defendants and their agents claim to not recall key events.

While Appellant had a lateness issue, she was not the only one. Duffy conducted an investigation on "everybody who was coming in late." Appellant's immediate manager confirmed in her deposition that they decided to check out

how late "they," — the MUAs — were coming in to work. MUAs Loretta Calderon and Janet Flora had lateness issues. After a badge swipes report informing Guzman that several MUAs were frequently late, she sent out an email to all MUAs reminding them of the need for punctuality, and she physically met about four MUAs, excluding Appellant.

A jury may have concluded that lateness was a problem with some MUAs, other than Appellant, and could have reasonably suspected that that Appellant, a vociferous complainer, was the only one terminated. Defendants' witnesses did not deny their deposition that Appellant complained about not receiving overtime. They only countered that they did *not remember* if she had complained or not. Importantly, Appellant complained about other things as well, such as not getting reimbursed expenses, not getting time-and-half for working on Martin Luther King day, and not getting a "day rate" for an on location shoot. A person who complains about these things, would have likely complained about overtime as well, if they perceived that to be an issue.

### *The temporal proximity raises a strong inference of retaliation*

"A [plaintiff] can indirectly establish a causal connection to support a retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action." Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty, 252 F.3d 545, 554 (2d Cir. 2001) (citing

12

Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 446–47 (2d Cir.1999) (abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier); Quinn v.Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir.1998) (discharge less than two months after Appellant filed a sexual harassment complaint with management and ten days after filing complaint with state human rights office provided prima facie evidence of a causal connection between protected activity and retaliation); and Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45–46 (2d Cir.1980) (eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship)).

Here, Appellant was terminated or "de-scheduled" in early January 2016. That is *only two months* from when she last complained in November 2015. The decision to terminate Appellant was made by Duffy, Guzman and a representative from Yoh, Tara Fields. Appellant complained about her overtime issues to at least two of these individuals, Guzman and Fields. Further, one of these individuals, Duffy, according to Guzman, was allegedly "pissed".

So, there is strong inference that can be drawn from the instant record, that Appellant was terminated because of her protected activities. Appellees' suggestion below that Appellant was terminated because one of CNBC's employees complained about her lateness, appears pretextual in light of the fact that other MUAs had documented lateness issues too.

13

## CONCLUSION

For the foregoing reasons, the District Court's grant of Appellees' Motion For Summary Judgment should be reversed, and Appellant should be permitted to place her retaliation claim before a SDNY jury.

Dated:   New York, New York
         August 5, 2019

                                    Respectfully Submitted,
                                    Law Offices of Ambrose W. Wotorson
                                    S// *Ambrose W. Wotorson, Jr.*
                                    225 Broadway, 41st
                                    New York, New York 10007
                                    (212) 884-5985
                                    (609) 598-0567 (cellular)
                                    Loaww1650@aol.com

## Certificate of Compliance with Rule 32(a)

1. **This brief complies with the type-volume limitation of Fed. R. App P. 32(a)(7)(B) because this brief contains 3179 words** excluding the parts of the brief exempted by Fed. R. App. P 32(a0(7(B)(iii)

2. **This brief complied with the typeface requirements of Fed R. App. P 32(a)(5) and type style requirements of Fed. R. APP.p 32(a)(6) because:** this brief has been prepared in a proportionally spaced typeface using Word in Times New Roman, font size 14.

//s Ambrose W. Wotorson, Jr.
Attorney for Plaintiff-Appellant
Dated: August 5, 2019