# No. 19-1020

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

YAJAIRA VELAZQUEZ,

*Plaintiff - Appellant*,

v.

Yoh Services, LLC, CNBC, LLC, NBCUniversal Media, LLC, Brenda Guzman, Individual and Official Capacity, Mary Duffy, Individual and Official Capacity, CNBC, Inc.,

*Defendants – Appellees*,

John and Jane Doe 1 through 10, Individual and Official Capacities, XYZ Corp., 1-10,

*Defendants*.

Appeal from a final Order of the United States District Court for the Southern District of New York, entered March 15, 2019 in Civil Action No. 17-842

**BRIEF OF APPELLEES**

NBCUNIVERSAL MEDIA, LLC
Erik Bierbauer
Andrew D. Jacobs
30 Rockefeller Plaza
New York, NY 10112
Tel:  212.664.4167
*Attorneys for Appellees CNBC, LLC (f/k/a CNBC, Inc.), NBCUniversal Media, LLC, Brenda Guzman, and Mary Duffy*

LITTLER MENDELSON, P.C.
Kimberly J. Gost
Paul C. Lantis
Three Parkway
1601 Cherry St., Suite 1400
Philadelphia, PA 19102
Tel:  267.402.3007
*Attorneys for Appellee Yoh Services, LLC*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Yoh Services, LLC is a limited liability corporation. Yoh Services, LLC is 100% owned by H.L. Yoh Company, LLC. H.L. Yoh Company, LLC is 100% owned by DZ Yoh LLC. DZ Yoh LLC is 100% owned by The Day & Zimmermann Group, Inc. No publicly held corporation owns 10% or more of its stock.

CNBC, LLC, (f/k/a CNBC, Inc.) is a limited liability company that is 100% owned by NBCUniversal Media, LLC, which is a limited liability company that is indirectly 100% owned by Comcast Corporation. Comcast Corporation is a publicly held corporation. No publicly held corporation owns 10% or more of its stock.

# **TABLE OF CONTENTS**

**Page**

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE CASE .............................................................2

SUMMARY OF THE ARGUMENT ....................................................8

STANDARD OF REVIEW ................................................................10

ARGUMENT ...................................................................................10

THE COURT SHOULD AFFIRM THE DISMISSAL OF  VELAZQUEZ'S
FLSA RETALIATION CLAIM .........................................................10

    I.    Velazquez Cannot Establish a Prima Facie Case of Retaliation ........11

        A.    Velazquez Did Not Engage in Protected Activity ..................11

        B.    Velazquez Cannot Establish Causation ..................................16

    II.    Velazquez Failed to Show that CNBC's Legitimate Reason
Was Pretextual ........................................................................19

        A.    Velazquez Admitted All the Facts Underlying CNBC's
Decision ..............................................................................19

        B.    Velazquez Cannot Establish Pretext ......................................22

CONCLUSION ................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Bd. of Educ.*,
    107 F. Supp. 3d 323 (S.D.N.Y. 2015), *aff'd*, 648 F. App'x 118 (2d
    Cir. 2016) ...................................................................................................18

*Allianz Ins. Co. v. Lerner*,
    416 F.3d 109 (2d Cir. 2005) ...............................................................10

*Benjamin v. Terrero*,
    2017 WL 187479 (S.D.N.Y. Jan. 13, 2017) ......................................18

*Bernard v. J.P. Morgan Chase Bank N.A.*,
    2010 WL 423102 (S.D.N.Y. Feb. 5, 2010) ........................................16

*Caddick v. Pers. Co. I LLC*,
    2018 WL 3222520 (S.D.N.Y. June 29, 2018) ...................................14

*Casciani v. Nesbitt*,
    392 F. App'x 887 (2d Cir. 2010) ........................................................10

*Centeno v. 75 Lenox Realty LLC*,
    2017 U.S. Dist. LEXIS 50819 (E.D.N.Y. Mar. 31, 2017)................12

*Dawson v. Long*,
    2018 WL 5914859 (S.D.N.Y. Aug. 20, 2018)...................................17

*Dunn v. Sederakis*,
    143 F. Supp. 3d 102 (S.D.N.Y. 2015) .........................................12, 14

*Giudice v. Red Robin Int'l, Inc.*,
    555 F. App'x 67 (2d Cir. 2014) ..........................................................16

*Grant v. Bethlehem Steel Corp.*,
    622 F.2d 43 (2d Cir. 1980) .................................................................18

*Greathouse v. JHS Sec., Inc.*,
    784 F.3d 105 (2d Cir. 2015) .........................................................12, 15

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
542 F.3d 290 (2d Cir. 2008) .................................................................10

*Mattera v. JPMorgan Chase Corp.*,
740 F. Supp. 2d 561 (S.D.N.Y. 2010) .................................................12

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973).............................................................................10

*Moccio v. Cornell Univ.*,
889 F. Supp. 2d 539 (S.D.N.Y. 2012), *aff'd*, 526 F. App'x 124 (2d
Cir. 2013) .............................................................................................17

*Mullins v. City of New York*,
626 F.3d 47 (2d Cir. 2010) ..................................................................11

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
723 F.3d 192 (2d Cir. 2013) ................................................................12

*Pearson v. Unification Theological Seminary*,
785 F. Supp. 2d 141 (S.D.N.Y. 2011) .................................................23

*Quinn v. Green Tree Credit Corp.*,
159 F.3d 759 (2d Cir. 1998) ................................................................17

*Richardson v. New York State Dept. of Corr. Serv.*,
180 F.3d 426 (2d Cir. 1999) ................................................................17

*Varughese v. Mount Sinai Med. Ctr.*,
2015 WL 1499618 (S.D.N.Y. Mar. 27, 2015)......................................23

*Wang v. Palmisano*,
157 F. Supp. 3d 306 (S.D.N.Y. 2016) ..................................................19

*Watkins v. First Student, Inc.*,
2018 WL 1135480 (S.D.N.Y. Feb. 28, 2018) .......................................15

**Statutes**

28 U.S.C. § 1291(a) ..................................................................................1

28 U.S.C. § 1331 .......................................................................................1

Age Discrimination in Employment Act ..................................................12

Fair Labor Standards Act ....................................................................*passim*

New York Labor Law ....................................................................2, 3, 8

**Other Authorities**

Local Rule of Civil Procedure 56.1 ...................................................5, 19

## <u>JURISDICTIONAL STATEMENT</u>

The district court had jurisdiction over this action pursuant to 28 U.S.C. § 1331. The district court's jurisdiction arose from Appellant Yajaira Velazquez's ("Velazquez") assertion of federal claims against Appellees Yoh Services, LLC ("Yoh"), CNBC, LLC f/ka/ CNBC, Inc. ("CNBC"), NBCUniversal Media, LLC ("NBCUniversal"), Mary Duffy ("Duffy"), and Brenda Guzman ("Guzman") (together, "Appellees"), including a claim under 29 U.S.C. § 215(a)(3).

The Court of Appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291(a). The final order that is being appealed from disposed of all parties' claims and was entered on March 15, 2019; final judgment was entered on March 18, 2019. Velazquez filed a notice of appeal on April 16, 2019.

## STATEMENT OF THE CASE

Velazquez, who was employed for 16 months by Yoh and assigned to work at CNBC as a hair and makeup artist, commenced this action on February 3, 2017. She asserted overtime wage and retaliation claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"); recordkeeping and itemized wage statement claims under the NYLL; race, color, and national origin discrimination claims under the New York State Human Rights Law; and race and color discrimination claims under the New York City Human Rights Law. Velazquez later added race and color discrimination claims under 42 U.S.C. § 1981.

After the parties completed discovery, Appellees moved for summary judgment on all of Velazquez's claims. On March 15, 2019, the district court granted the motion in its entirety, finding, among other things, that "[Velazquez] has not pointed to a single workweek in which she worked uncompensated time in excess of 40 hours" and that she "does not identify any evidence that her chronic lateness"— the stated reason for her firing—"was a pretext for anything." (SPA 1558, 1572.)

Velazquez does not challenge the dismissal of her overtime wage claims or her discrimination claims, thus leaving undisturbed the district court's conclusion that Velazquez has provided no evidence of unpaid overtime or discrimination.

Nevertheless, Velazquez appeals the dismissal of her FLSA retaliation claim,[1] arguing that CNBC removed her from her hair and makeup assignment because she allegedly *complained* about unpaid overtime. But the undisputed facts demonstrate that Velazquez's alleged informal complaints, which did not even relate to overtime, had nothing to do with CNBC's decision. The Court should therefore affirm the dismissal of Velazquez's FLSA retaliation claim.

CNBC's and Yoh's Engagement of Velazquez

NBCUniversal and CNBC operate the CNBC cable television network, which provides live financial market coverage and business news. (JA 271 ¶ 2.) Yoh is a staffing agency that helps CNBC fulfill various labor needs. (JA 215 ¶ 7.)

Velazquez was employed by Yoh and assigned to provide hair and makeup services to on-air talent for CNBC. (JA 215, 217 ¶¶ 7-8, 19.) Velazquez's point of contact at CNBC was Brenda Guzman, the Production Manager responsible for the network's hair and makeup operations. (JA 215 ¶ 4.) Guzman's supervisor was Mary Duffy, Vice President of Talent Development and Senior Executive Producer at CNBC. (JA 215 ¶ 6.) Velazquez's contact at Yoh was Tara Fields-Gomez, a Yoh Resource Manager. (JA 235 ¶ 5.)

---

[1] Velazquez also does not challenge the district court's dismissal of her NYLL retaliation claim.

3

Velazquez began working at CNBC in late September 2014, handling hair and makeup at several locations from which CNBC broadcast live, most often the New York Mercantile Exchange ("NYMEX") and the New York Stock Exchange ("NYSE"). (JA 217, 219 ¶¶ 19-20, 34.) At NYMEX, Velazquez did hair and makeup for CNBC reporter Jackie DeAngelis. (JA 219 ¶ 35.)

According to Velazquez, she generally worked from 8:30 a.m. until around 2:00 p.m. at the NYMEX and NYSE (totaling roughly 27.5 hours per week), and she was assigned an additional shift less than once per week. (JA 933:16-934:13, 937:5-940:1.) After her first year, Velazquez was scheduled to work roughly 20 hours per week. (JA 1020:1-1021:2.) Thus, by September 2015, Ms. Velazquez was working significantly less than 40 hours per week. (*Id.*)

Velazquez was paid on an hourly basis and was responsible for reporting her own time on an electronic timekeeping system. (JA 215, 217 ¶¶ 9-10, 21-22; JA 242-43 ¶¶ 12-13.) Each week, she was to enter her time into the system, at which point the hours were sent automatically to Guzman for approval. (JA 216 ¶ 14; JA 243 ¶ 14.) Yoh issued payments for submitted and approved time once a week. (JA 216 ¶¶ 16-18.) CNBC's and Yoh's business records demonstrate that Velazquez was paid her overtime rate for all overtime hours she worked, in the rare weeks that she worked overtime. (*See* JA 284-95 ¶¶ 70-150.) In the district court, Velazquez

4

failed to identify any week in which she worked uncompensated overtime. (SPA 1561.)

*Velazquez's Chronic Lateness and Unreliability*

On January 29, 2016, CNBC removed Velazquez from the hair and makeup schedule, effectively terminating her assignment, because she was chronically late to work.[2] In the proceedings below, Velazquez either admitted or failed to genuinely dispute the core facts leading to her removal.

As Velazquez expressly admitted, it is very important to CNBC's live television operation that its hair and makeup artists are punctual, and a hair and makeup artist's persistent lateness constitutes unsatisfactory job performance. (JA 218 ¶¶ 26-27; JA 817 ¶¶ 26-27.)[3] Velazquez's problem with lateness began very shortly after her hire: in October 2014, her lateness caused a CNBC contributor to

---

[2] In her appeal brief, Velazquez asserts that "[t]he decision to terminate [Ms. Velazquez] was made by Duffy, Guzman and . . . Tara Fields." (Velazquez Br. 9, citing Duffy 20-23 (JA 1252-55)). In the cited testimony, Duffy is asked to whom she was referring when she said "we" decided to take Velazquez off the schedule; she answered, "Brenda Guzman, myself." (JA 1255:19-23.) When asked if anyone else participated, Duffy testified, "the Yoh representative would have been notified." (JA 1255:24-1256:2.) Velazquez's assertion that Fields-Gomez was a decision maker is thus unsupported in the record.

[3] Indeed, Guzman testified that she was personally involved in ending the assignment of at least one other makeup artist for lateness. (JA 219 ¶ 28; JA 277 ¶ 33; JA 736:22-737:21.) While Velazquez disputed this testimony on the grounds of hearsay (JA 817 ¶ 28), that objection has no basis—"[t]he witness [was] reporting what she did" (SPA 1548)—and the district court properly deemed it admitted under Local Rule 56.1(c) (*id.*).

miss his scheduled appearance on the network. (JA 218 ¶ 30; JA 817 ¶ 30.) Guzman warned Velazquez that this was unacceptable. (JA 218 ¶ 31; JA 818 ¶ 31.) But Velazquez continued to be late for work. (JA 219 ¶ 33; JA 818 ¶ 33.)

Velazquez admitted that CNBC on-air talent and staff complained about her lateness. (*Id.*) In July 2015, as complaints about Velazquez's lateness mounted, Guzman and Duffy collected badge swipe data from the NYSE, which showed that Velazquez had been late to her assignment there 35 times over the previous two months—far more often than any of her peers. (JA 219 ¶¶ 36-39.) Velazquez admitted that Guzman warned her again about her lateness after the badge swipe analysis. (JA 220 ¶¶ 40-42; JA 819 ¶¶ 40-42.) Her attendance nevertheless deteriorated to the point that Duffy adjusted Velazquez's call time in November 2015 to try to accommodate her late arrivals to the NYSE, but Velazquez was late even for her adjusted call time. (JA 221 ¶¶ 48-49; JA 819 ¶¶ 48-49.)

On January 28, 2016, Velazquez was 30 minutes late for her assignment to handle DeAngelis's hair and makeup at NYMEX. (JA 221 ¶ 51.) The next day, Velazquez overslept and did not arrive for her NYMEX shift, requiring DeAngelis to do her own hair and makeup. (*Id.* ¶¶ 52-54.) In light of the missed shift and Velazquez's history of unreliability, DeAngelis asked Guzman to stop scheduling Velazquez to handle her hair and makeup. (JA 221-22 ¶¶ 55-56.) During Velazquez's time at CNBC, no other hair and makeup artist was the subject of a

similar request by on-air talent.  (JA 223 ¶ 63.)  Guzman ultimately concluded, with Duffy's agreement, that Velazquez should be taken off the hair and makeup schedule altogether, effectively ending Velazquez's assignment, and she informed Velazquez of that decision on January 29, 2016.  (JA 222 ¶¶ 56-58.)

Velazquez's Allegations of Retaliation

In her pleadings and at her deposition, Velazquez claimed to have made various complaints about her compensation during her time at CNBC, none of which relate to overtime or any other right protected by the FLSA.  According to Velazquez:

- In November 2015—months after CNBC had reduced Velazquez's hours to approximately 20 per week—she complained to Guzman, saying, "Where is my money?"; "You do this shit often. I'm tired of it."; and "I better get paid in the next week."  (JA 1024:5-13.)

- She complained to Guzman and Fields-Gomez that she was not paid time-and-a-half as holiday pay on Martin Luther King Day, even though this is not a legal requirement and she admittedly did not work more than 40 hours that week.  (JA 1131:19-1132:9, 1212:23-1215:19.)

- At some point, she sent Guzman a text message asking if Guzman had "had been to my Yoh account again to fix my hours because I was short on money."  (JA 932:14-23.)

- In certain unspecified instances, she "would question Tara Fields about inputting time and hours missing."  (JA 1204:19-24, 1218:6-1221:24.)

- In certain unspecified instances, she "would question" Guzman about discrepancies in her pay, and Guzman would respond that she was "carrying over" Velazquez's hours from one week to another for budgetary reasons. (JA 1204:19, 1205:21-1207:6.)

*The District Court Dismissal*

The district court dismissed Velazquez's retaliation claims on two grounds, each of which provides an independent basis to affirm. First, it held that none of Velazquez's alleged complaints constituted protected activity under the FLSA or NYLL. The court evaluated each of the "vague comment[s]" Velazquez had described, concluding that they "articulate no right protected by the federal or state labor laws, and are not reasonably susceptible of being interpreted as an invocation of her rights under such laws." (SPA 1564-65.) Second, the court found that Velazquez "[did] not offer an iota of evidence that firing her for lateness was pretextual." (SPA 1567.) It emphasized that "[n]one of the critical facts is in dispute," cataloging Velazquez's express and *de facto* admissions regarding the importance of punctuality to the job, her own chronic lateness, the warnings repeatedly given to her, and the events leading to her de-scheduling. The district court correctly noted that Velazquez had provided only "a blanket denial" and "irrelevant testimony" to rebut this evidence, each insufficient to raise any genuine issue of material fact. (SPA 1566.)

## SUMMARY OF THE ARGUMENT

The district court properly dismissed Velazquez's FLSA retaliation claim because Velazquez did not engage in protected activity and failed to provide any evidence that the decision to terminate her employment was pretextual.

Velazquez argues that the district court erred in granting summary judgment for three reasons: (1) the evidence in the record supports a reasonable inference that Velazquez engaged in protected activity; (2) the temporal proximity between Velazquez's alleged complaints and her termination creates an inference of causation; and (3) because other makeup artists were sometimes late, CNBC's decision was pretextual. None of these arguments warrants reversal.

First, the district court properly considered the alleged informal complaints made by Velazquez, including the context in which they were made (a period of time in which she was working roughly 20 hours per week), and determined that they were not protected activity. Velazquez's attempts to undercut the district court's analysis are based on mischaracterizations of the record; none of the complaints came in the context of a discussion about unpaid overtime or hours worked in excess of 40 in a workweek. Velazquez's unsupported allegations to the contrary are unavailing.

Second, Velazquez's argument that she made a *prima facie* showing of causation fails. The record demonstrates that Velazquez's persistent lateness and CNBC's warnings started long before her alleged protected activity, severing any purported causal connection. Velazquez's failure to raise an inference of causation provides an alternative basis to affirm the district court's ruling.

Finally, Velazquez admitted the material facts demonstrating that the reason for her termination was not pretextual, and Velazquez's argument that similarly situated workers were treated more favorably than she was does not withstand scrutiny. Thus, even if Velazquez had made a *prima facie* case of retaliation, which she did not, the district court properly dismissed her claim for the independent reason that she failed to provide evidence of pretext.

## STANDARD OF REVIEW

This Court reviews a district court grant of summary judgment *de novo*. *Casciani v. Nesbitt*, 392 F. App'x 887, 888 (2d Cir. 2010) (citing *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010)). Summary judgment is warranted where there is no genuine issue of material fact. *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005). While the court must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in [her] favor" (id.), a party may not avoid summary judgment with "assertions that are conclusory . . . or based on speculation." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (internal citations omitted).

## ARGUMENT

## THE COURT SHOULD AFFIRM THE DISMISSAL OF VELAZQUEZ'S FLSA RETALIATION CLAIM

A retaliation claim under the FLSA is analyzed under the three-step burden-shifting analysis established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

10

803 (1973). *Mullins v. City of New York,* 626 F.3d 47, 53 (2d Cir. 2010). Under that analysis, Velazquez has the initial burden to establish "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins*, 626 F.3d at 53. If this *prima facie* case is made, the burden shifts to Appellees to proffer a legitimate, non-retaliatory reason for the alleged adverse action. Finally, the burden shifts to Velazquez to prove by a preponderance of the evidence that Appellees' stated reason is pretext for retaliation.

Velazquez's retaliation claim fails because she did not establish (1) that she engaged in protected activity, (2) any causation between her alleged protected activity and her separation from Appellees, and (3) that CNBC's stated reasons for deciding to stop scheduling her were pretext for retaliation. Each of these is an independent basis to affirm the district court's grant of summary judgment.

## I.     Velazquez Cannot Establish a Prima Facie Case of Retaliation

### A.     Velazquez Did Not Engage in Protected Activity

An employee may premise an FLSA retaliation claim on a complaint made to an employer only where "the complaint is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection.'"

*Greathouse v. JHS Sec., Inc.*, 784 F.3d 105, 107 (2d Cir. 2015) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 1335 (2011)). The rights protected by the FLSA are the payment of minimum wages and overtime wages. *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). The overtime threshold under the statute is 40 hours per workweek. 29 U.S.C. 207 § (a)(2).

To support an FLSA retaliation claim, the complaint must contain a "clear articulation of facts indicative of illegality'"; "mere 'abstract grumblings' will not pass muster." *Dunn v. Sederakis*, 143 F. Supp. 3d 102, 113 (S.D.N.Y. 2015) (dismissing retaliation claim based on plaintiff's "opaque and unexplicated reference to 'overtime'" in alleged oral complaint). Determining whether a complaint is "protected activity" under the FLSA is a question of law. *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 579 (S.D.N.Y. 2010).[4]

Velazquez bases her retaliation claim entirely on the informal complaints she described at her deposition. She asserts that these alleged informal complaints were about not being paid overtime. (Velazquez Br. 12-13.)[5] While Velazquez makes

---

[4] *Mattera* involved a claim for retaliation under the Age Discrimination in Employment Act, which is analyzed in the same manner as a retaliation claim under the FLSA. *See Centeno v. 75 Lenox Realty LLC*, 2017 U.S. Dist. LEXIS 50819, at *16-17 (E.D.N.Y. Mar. 31, 2017).

[5] It bears repeating that the district court dismissed Velazquez's claims for unpaid overtime wages under the FLSA and New York law because Velazquez

much of the extent to which CNBC's witnesses remember her alleged complaints, none of them would constitute "protected activity" under the FLSA even if they occurred just as Velazquez described them, as the district court correctly held.

To start, Velazquez's alleged November 2015 oral complaint to Guzman— "Where is my money?"; "You do this shit often"; "I better get paid next week"— made no reference to overtime, and set forth no facts indicative of any other violation of the FLSA. (JA 1023:23-1024:16.) Velazquez insists that these demands *were* about "missing overtime pay" (*see* Velazquez Br. 9, 13, citing Velazquez Dep. 152-53 (JA 1023-24)), but her own testimony contradicts that assertion. Velazquez testified that by November 2015, her hours had been reduced to around 20 per week, and she was working roughly 2.5 allegedly unpaid hours per week—well below the 40-hour overtime threshold. (JA 1020:15-1021:2.) Thus, while Velazquez's alleged demand that she "better get paid in the next week" perhaps had something to do with the *timing* of wage payments, it certainly was not an assertion of the right to receive overtime pay under the FLSA.

While the focus of Velazquez's FLSA retaliation claim is her purported November 2015 oral complaint, Velazquez asserts in her brief that she "complained

---

"introduce[d] no competent evidence that she performed as much as one hour of uncompensated overtime work." (SPA 1558.) Velazquez does not appeal the dismissal of those claims. She has never claimed, and could not claim, that she was paid less than minimum wage.

about other things as well, such as not getting reimbursed expenses, not getting time and a half for working on Martin Luther King day, and not getting a 'day rate' for an on location shoot," arguing that those complaints purportedly demonstrate that she "would have likely complained about overtime as well." (Velazquez Br. 15.) [6] This "litany of complaints that plainly concern[] non-FLSA matters" only weakens Velazquez's claim of protected activity. *Dunn v. Sederakis*, 143 F. Supp. 3d 102, 113-14 (S.D.N.Y. 2015) (no protected activity despite alleged "unelaborated reference" to overtime, "[p]articularly given the non-statutory gist of [plaintiff's] other grievances"). As the district court correctly noted, none of those alleged complaints implicate rights under the FLSA, and therefore, cannot be considered protected activity. "The law does not require that work performed on a . . . holiday be compensated at time and a half rates." (SPA 1564.) Further, complaints about an employer's "internal policy" or an employee's alleged "contractual rights" do not constitute protected activity. *Caddick v. Pers. Co. I LLC,* 2018 WL 3222520, at *9 (S.D.N.Y. June 29, 2018).

Velazquez's remaining assertions fare no better. Her claims that she texted Guzman that she was "short on money," that she "question[ed]" Guzman about

---

[6] Velazquez implicitly concedes that the January 2016 Martin Luther King Day complaint does not constitute protected activity, as she claims elsewhere in her brief that "she *last* complained in November 2015." (Velazquez Br. 16) (emphasis added).

14

suspected discrepancies in her pay, and that she "question[ed] Tara Fields about inputting time and hours missing" (JA 932:15-23, 1204:19-24, 1206:2-1208:21) at most "paint a picture of an employee who approached her employer about her pay because she did not understand or could not reconcile her payroll stubs." *Watkins v. First Student, Inc.*, 2018 WL 1135480, at *10 (S.D.N.Y. Feb. 28, 2018). These vague comments contain no detail that would reasonably lead CNBC or Yoh to understand that Velazquez was making a "call for [her] protection" under the FLSA. *Greathouse*, 784 F.3d at 107.

Again, Velazquez tries to avoid this conclusion by distorting her own testimony: she says in her brief that she "complained about the practice of overtime hours being carried over because of alleged budgetary issues," but her cited testimony makes no mention whatsoever of overtime. (Velazquez Br. 9, citing Velazquez Dep. 332-33, 349-51 (JA 1207-08, 1224-26)). In any event, the relevant context once again undermines her claim. Velazquez testified that she generally worked well under the 40-hour overtime threshold: her usual schedule totaled less than 30 hours per week, and after her first year, her hours were closer to 20 per week. *See supra* at 4. It would have been affirmatively *un*reasonable for Guzman or anyone else at CNBC or Yoh to believe that a complaint from Velazquez about "carrying over" Velazquez's hours from one week to another was a complaint about unpaid *overtime* hours in excess of 40 in a week.

Velazquez's claimed complaints "would not have put any Defendant on notice that [she] was asserting her statutory rights to overtime pay under the FLSA." (SPA 1565.) As a result, her retaliation claim failed to establish that she engaged in a protected activity.

## B. Velazquez Cannot Establish Causation

The undisputed facts demonstrate not only that Velazquez did not engage in protected activity, but also that no causal link exists between her alleged activity and CNBC's decision to take her off the schedule. While the district court did not address the lack of causation (instead assuming a *prima facie* case for purposes of its pretext analysis), it provides an alternative basis for affirmance.

"When discipline or expressed dissatisfaction with job performance has taken place before the plaintiff engages in a protected activity, a causal nexus does not exist between the protected activity and a subsequent adverse action." *Bernard v. J.P. Morgan Chase Bank N.A.*, 2010 WL 423102, at *17 (S.D.N.Y. Feb. 5, 2010)), *aff'd*, 408 F. App'x 465 (2d. Cir. 2011); *see Giudice v. Red Robin Int'l, Inc.*, 555 F. App'x 67, 69 (2d Cir. 2014). Here, the only alleged protected activity for which Velazquez provides a date occurred in November 2015. (Velazquez Br. 13.) But she raises no genuine dispute that appellees had warned her repeatedly, *well before November 2015*, that her lateness was unacceptable. (*See* JA 218-20 ¶¶ 31-45.) These facts alone break any claimed causal link.

16

Further, "courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 587 (S.D.N.Y. 2012), *aff'd*, 526 F. App'x 124 (2d Cir. 2013); *see Dawson v. Long*, 2018 WL 5914859, at *16 (S.D.N.Y. Aug. 20, 2018) (collecting cases). The decision to stop scheduling Velazquez was made on January 29, 2016, over two months after she "last complained" in November 2015. (Velazquez Br. 16.) In the intervening months, she was late for her shifts multiple times and then missed her assignment completely on January 29, 2016. (JA 221-22 ¶¶ 50-56.) These facts, too, preclude any inference of causation.

Velazquez argues on appeal that the "temporal proximity" of her November 2015 complaint and CNBC's adverse action *does* establish causation. (Velazquez Br. 15-16.) In doing so, she relies on inapt cases where the evidence showed protected activity closer than two months before the alleged retaliation. (Velazquez Br. 15-16, citing *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 555 (2d Cir. 2001) (record included evidence of protected activity "only a few days" prior to alleged retaliation); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) ("discharge came less than two months after [plaintiff] filed a complaint with [employer] and just *ten days* after she filed a complaint with [agency]); *Richardson v. New York State Dept. of Corr. Serv.*, 180

F.3d 426, 435, 446-47 (2d Cir. 1999) (abusive treatment occurred within one month of protected activity)).[7]  None of these decisions involved a preexisting history of expressed performance dissatisfaction and intervening misconduct, as at issue here.

Other than inapt case law, Velazquez supports her causation argument only with her own testimony that Guzman responded to her November 2015 complaint "by telling her she was 'being a pain in the ass' and that [Ms.] Duffy was 'really pissed at [her].'"  (Velazquez Br. 14.)  These alleged comments are too vague and isolated from the challenged action to establish a causal link even if they were made, which they were not.  *See, e.g., Alexander v. Bd. of Educ.,* 107 F. Supp. 3d 323, 330 (S.D.N.Y. 2015), *aff'd*, 648 F. App'x 118 (2d Cir. 2016).  Moreover, as noted above, the decision to end Velazquez's assignment was made on the same day Velazquez overslept and missed yet another shift.  Thus, Velazquez's own misconduct breaks any chain of causation.  *Benjamin v. Terrero*, 2017 WL 187479, at *9 (S.D.N.Y. Jan. 13, 2017) (granting summary judgment on retaliation claims, finding that plaintiff's termination within days of her failure to come to work precluded causation).

---

[7] The only case Velazquez cites involving a temporal gap significantly longer than two months involved unique circumstances inapplicable here.  In *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43 (2d Cir. 1980), this Court found that plaintiff established causation because his employer failed to offer him another job after he completed an eight-month assignment that the employer had *already given him* prior to his filing of an EEOC charge.  *Id.* at 45–46.  The *Grant* Court did not analyze the time between the protected activity and the alleged adverse action.

Velazquez's chronic lateness, and CNBC's response, began well before the alleged protected activity and continued well after it. Nothing changed. There is no causal connection between the alleged complaints and CNBC's adverse action.

## II. Velazquez Failed to Show that CNBC's Legitimate Reason Was Pretextual

Even if Velazquez had established a *prima facie* case of FLSA retaliation, which she did not, the district court properly dismissed her claim because Velazquez failed to offer "an iota of evidence" that CNBC's legitimate, non-retaliatory reason to end her assignment was pretextual. (SPA 1567.)

Where, as here, an employer proffers a legitimate, non-retaliatory basis for its action, the burden shifts to plaintiff "to show that the employer's explanation is a pretext for retaliation." *Wang v. Palmisano*, 157 F. Supp. 3d 306, 328 (S.D.N.Y. 2016) (citation omitted). CNBC took Velazquez off the hair and makeup schedule solely because of her chronic lateness and unreliability, and Velazquez expressly or effectively admitted all of material the facts proving as much.

### A. Velazquez Admitted All the Facts Underlying CNBC's Decision

Local Rule of Civil Procedure 56.1 provides that each paragraph in a summary judgment movant's statement of undisputed material facts "***will be deemed to be admitted*** . . . unless ***specifically controverted***" in the opposing party's statement with "evidence which would be admissible" at trial. (Emphasis added.) As the district court properly found, Velazquez "stipulated to most of the material facts regarding

19

her lateness" and failed to "offer any . . . admissible evidence contradicting Defendants[]" regarding the events leading up to her termination. (SPA 1566.) Velazquez therefore admitted or must be deemed to have admitted all those facts.

To start, Velazquez expressly admitted that a hair and makeup artist's persistent lateness constitutes unsatisfactory job performance, that on-air talent and staff complained about her lateness, that she was warned about her lateness, and that Duffy adjusted Velazquez's call time in November 2015 to accommodate her lateness, to no avail. (*Compare* JA 218-221 ¶¶ 27, 31-33, 40-42, 48, *with* JA 817-19 ¶¶ 27, 31-33, 40-42, 48.)

Velazquez did not genuinely dispute that badge swipe data collected by CNBC in 2015 showed she was late to NYSE 35 times in less than two months, that she was late to NYSE far more often than her peers, and that the degree of her lateness—often more than 15 minutes—was greater than her peers. In her purported denial of these facts, Velazquez merely pointed out that the badge swipe data showed other hair and makeup artists had "lateness issues," though she admitted that those issues "where [*sic*] allegedly not as bad as plaintiff's." (*Compare* JA 219 ¶¶ 36-39, *with* JA 818-19 ¶¶ 36-39.)

Most strikingly, Velazquez did not genuinely dispute the events that immediately precipitated CNBC's taking her off the schedule. On January 28, 2016, she was 30 minutes late for her assignment to handle DeAngelis's hair and makeup

at NYMEX. (JA 221 ¶ 51.) The next day, Velazquez overslept and did not arrive for her NYMEX shift, requiring DeAngelis to do her own hair and makeup. (*Id*. ¶¶ 52-54.) In light of the missed shift and Velazquez's history of unreliability, DeAngelis asked Guzman to stop scheduling Velazquez to handle her hair and makeup. (JA 221-22 ¶¶ 55-56.) During Velazquez's time at CNBC, no other hair and makeup artist was the subject of a similar request by on-air talent. (JA 223 ¶ 63.) Guzman concluded that Velazquez should be taken off the hair and makeup schedule altogether, and, with Duffy's agreement, she informed Velazquez of that decision the same day. (JA 222 ¶¶ 56-58.)

Velazquez's sole response to the events of January 28 and 29, 2016 is a *non sequitur*: "Denied. A badge swipes report showed that [makeup artists] other than plaintiff, had lateness issues." (*Compare* JA 221-23 ¶¶ 51-56, *with* JA 820 ¶¶ 51-56.) The district court properly deemed these facts admitted because Velazquez offered no evidence in response creating a dispute of fact. (SPA 1566.)

Velazquez had the opportunity to try to refute these facts at the summary judgment stage, but she did not—unsurprisingly, since the record would not support her denials. She is therefore left with the undisputed fact that CNBC decided to take her off the schedule solely because of her lateness and unreliability.

21

## B. Velazquez Cannot Establish Pretext

Velazquez tries to save her claim by asserting that other hair and makeup artists had "lateness issues" like her, but were not taken off the schedule. (Velazquez Br. 15.) She relies specifically on the 2015 badge swipe analysis from the NYSE, singling out Loretta Calderon and Janet Flora as other artists with for whom "lateness was a problem." (Velazquez Br. 14.) But this badge swipe analysis does not help Velazquez: it demonstrates that in June and July 2015, she was more than five minutes late for her shift at the NYSE *35 times*—much more than the *total combined number of times* that Calderon and Flora were late—and that, unlike those artists, Velazquez was often more than 15 minutes late. (JA 219 ¶¶ 37-39; JA 357-59.)

Further, the specific lateness issue documented by the badge swipe analysis at the NYSE was far from the only reason that CNBC took Velazquez off the schedule. There is overwhelming additional evidence of Velazquez's uniquely severe lateness problem that refutes any notion of pretext. The undisputed evidence shows that *no other artist:*

- was persistently late after being warned numerous times that lateness was unacceptable (JA 218, 220 ¶¶ 31, 40-41, 45);

- was late to her NYSE shift even after CNBC adjusted her start time to accommodate her (JA 221 ¶¶ 49-50);

- was the subject of complaints by talent about her lateness (JA 220-21 ¶¶ 45-47);

- was 30 minutes late for a shift and then failed to show up for her shift the next day with no legitimate excuse (JA 221 ¶¶ 51-54; JA 618-20); and

- had a CNBC reporter become so fed up with her lateness and unreliability that she asked Guzman to stop assigning the artist to work with her (JA 221 ¶ 55).

Because Velazquez admits the facts underlying the decision to terminate her employment and cannot point to any evidence that casts doubt on CNBC's stated reasons, this Court should affirm the district court's grant of summary judgment for this independent reason. See, e.g., *Varughese v. Mount Sinai Med. Ctr.*, 2015 WL 1499618, at *3, *56 (S.D.N.Y. Mar. 27, 2015) ("On the evidence in the record, no reasonable juror could find [plaintiff] to have overcome the overwhelming evidence that [d]efendants disciplined and terminated her, not because of her sex or her ethnicity, but because of her own admitted behavior"); *Pearson v. Unification Theological Seminary*, 785 F. Supp. 2d 141 (S.D.N.Y. 2011) (dismissing discrimination claims where plaintiff admitted to the misconduct defendant stated was the reason for termination).

## **CONCLUSION**

For the foregoing reasons, Appellees respectfully request that the Court affirm

the district court's March 15, 2019 Order granting Appellees' motion for summary

judgment.

Dated:  November 25, 2019                    Respectfully submitted,
        New York, New York

LITTLER MENDELSON, P.C.              NBCUNIVERSAL MEDIA, LLC

By:   /s/ Paul C. Lantis                        By:   /s/ Erik Bierbauer
Kimberly J. Gost                                  Erik Bierbauer
Paul C. Lantis                                      Andrew D. Jacobs
Three Parkway                                    30 Rockefeller Plaza
1601 Cherry St., Suite 1400                New York, NY 10112
Philadelphia, PA 19102                      Tel:  212.664.4167
Tel:  267.402.3007

*Attorneys for Appellee Yoh Services,*      *Attorneys for Appellees CNBC, LLC, (f/k/a*
*LLC*                                                      *CNBC, Inc.), NBCUniversal Media, LLC,*
                                                *Brenda Guzman, and Mary Duffy*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that in compliance with the Federal Rules of Appellate Procedure, Appellees' Brief in in 14-point Times New Roman typeface and is 5,405 words calculated by Microsoft Word, a word processing program.

Dated:  November 25, 2019                Respectfully submitted,
           New York, New York


NBCUNIVERSAL MEDIA, LLC

By:   /s/ Andrew D. Jacobs
Erik Bierbauer
Andrew D. Jacobs
30 Rockefeller Plaza
New York, NY 10112
Tel:  212.664.4167

*Attorneys for Appellees CNBC, LLC, (f/k/a CNBC, Inc.), NBCUniversal Media, LLC, Brenda Guzman, and Mary Duffy*